[Crim. No. 1571.   In Bank.—December 30, 1910.]

THE PEOPLE, Respondent, v. EMMETT RIGGINS, Appellant.

CRIMINAL LAW—ACTUAL BIAS—BASIS OF OPINION.—Actual bias, as defined in section 1073 of the Penal Code, may consist of an opinion as to the guilt or innocence of the accused, based upon some knowledge or information of the facts embraced in the charge or of the evidence to be produced, or it may exist without such knowledge or information, and may consist of a preconceived opinion concerning the defendant or the prosecuting witness which would prevent a fair consideration by the juror of the evidence given or facts proven in the case.

ID.—ACTUAL BIAS OF JUROR IS QUESTION OF FACT—CONFLICT OF EVIDENCE.—Upon the examination of a juror on his *voir dire*, the question whether or not he has actual bias is one of fact, to be determined by the trial court upon the evidence before it. If the evidence is conflicting upon that question, as where the juror gives contradictory answers, the decision of the trial court thereon, as in any other case of conflicting evidence, is conclusive upon the appellate courts.

ID.—ABILITY OF JUROR TO SET ASIDE OPINION—INQUIRY AS TO BASIS OF OPINION.—The inquiry as to the ability of the juror to lay aside an opinion which he has, amounting to actual bias, and to act impartially and fairly in the matter, is pertinent and material, under section 1076 of the Penal Code, only where it is an opinion upon the matter to be submitted to him and is based solely upon public rumor, common notoriety, or statements in public journals. If the actual bias is of any other character, no further inquiry is authorized by law.

ID.—OPINION BASED ON EXTRANEOUS MATTERS—DISQUALIFICATION OF JUROR.—The juror's ability to disregard actual bias, shown to exist in his mind, is wholly immaterial, save in a case which comes within the exception specified in section 1076 of the Penal Code. If the opinion constituting the actual bias is not on the matter to be submitted to him, and is not based solely upon one or more of the sources of information named in the excepting clause of section 1076, the jury is disqualified, and no declaration by him that he can lay aside the prejudice and act fairly and impartially will remove the disqualification.

ID.—BELIEF OF GUILT OF PRIOR CRIMINAL CHARGE.—Upon a prosecution for an assault with intent to murder, a juror shown to have actual bias against the defendant, growing out of a belief that he was guilty of a prior murder of which he had been duly acquitted by a
CLIX Cal.—8

jury, is disqualified, notwithstanding his expression of an opinion that he could and would lay aside this prejudice and act fairly and impartially in the case.

ID.—EXHAUSTION OF PEREMPTORY CHALLENGES—ERROR IN REFUSING CHALLENGE FOR CAUSE.—Where a defendant has exhausted all his peremptory challenges, error in refusing to allow a challenge to a juror for actual bias is rendered substantially injurious, and necessitates a reversal of the judgment of conviction. In such case, no inquiry as to the sufficiency of the evidence to show guilt is indulged.

ID.—EVIDENCE OF STATEMENTS SHOWING MALICE.—On a trial for an assault with intent to murder, evidence that the defendant, a few hours after the alleged assault, called the person assaulted vile names, and cautioned the witness not to have anything to do with him, although not said in the presence of the person assaulted, was admissible as tending to show malice.

ID.—EVIDENCE OF POSSESSION OF PISTOL AFTER ASSAULT.—On such trial, evidence that the defendant, several hours after the alleged assault, was carrying a pistol other than the one with which the assault was claimed to have been committed, was irrelevant and should have been excluded.

ID.—EVIDENCE TENDING TO SHOW INTENT TO ASSAULT.—Evidence of a statement by the defendant, made about a week before the assault, that before he went to jail "somebody would go to the morgue," is relevant, when circumstances were proven tending to indicate that the person assaulted was the one to whom he intended to refer.

APPEAL from a judgment of the Superior Court of Fresno County and from an order refusing a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Henry Brickley, and W. D. Foote, for Appellant.

U. S. Webb, Attorney-General, and George Beebe, Deputy Attorney-General, and J. Charles Jones, for Respondent.

THE COURT.—The defendant was convicted of assault with intent to murder one A. L. Kreiss. His motion for a new trial was denied. He appealed from the judgment and order to the district court of appeal for the first district. The justices of that court being unable to agree, the case was transferred to this court for determination.

Several errors are alleged, but the principal point presented

is that the court erred in overruling the defendant's challenges for cause to the jurors, Simpson, Bargroth, and McKeen.

In July, 1905, the defendant shot and killed one Robert E. Dean in Fresno County. He was charged with the murder of Dean, and upon a trial he was acquitted thereof in September, 1905. The case had caused great public discussion, the local newspapers had published detailed accounts of the facts and of the trial, commenting thereon and denouncing the verdict as a miscarriage of justice, even going so far as to condemn the jurors who rendered the verdict. Great indignation was excited against the defendant on account of this, and it manifested itself to such an extent that he left Fresno County and was absent for nearly a year. The offense with which he now stands charged occurred after his return. An application for a change of venue on account of this general feeling against the defendant in Fresno County was presented to the court. Counter affidavits were filed. It appeared from the affidavits and counter affidavits that many persons in the county had expressed feelings of prejudice and bias against the defendant, but that there were also a great many persons who stood indifferent and knew nothing of the defendant or of the present or former charge. The court denied the application. This is assigned as error, but we think the affidavits presented such a conflict that this court cannot disturb the ruling. We mention the facts disclosed merely because they emphasize the necessity for care in passing upon challenges to individual jurors to see that the prevailing prejudice did not find its way into the jury box. On the trial it appeared that many persons were prejudiced against the defendant. Thirty-five of the jurors examined were excluded from the panel on the challenge of the defendant based on their testimony that their belief that the defendant was guilty of the murder of Dean was so strong, notwithstanding his acquittal, that they could not give him a fair and impartial trial upon the charge of which he stood accused.

No one of the jurors above named knew the defendant personally or had any personal feeling of ill-will toward him. They had no knowledge of the facts of the previous shooting of Dean, except what they had heard or had read in the newspapers. On his *voir dire* Simpson said that he thought Riggins was guilty of the murder of Dean and that by his acquittal

thereof he had unjustly escaped punishment, that this belief would influence him as a juror if selected to try the case in hand, that he would have a prejudice against the defendant on account of it, and that for that reason it would require less evidence for the prosecution to induce him to convict the defendant of the present charge, and more evidence of innocence to induce an acquittal, than if he were not thus prejudiced. In answer to questions by the district attorney he testified that he could and would lay aside this prejudice, if he were sworn as a juror in the case, and would give the defendant a fair and impartial trial. On re-examination, he said again, that, because of this belief that the defendant had murdered Dean, he would require more evidence on behalf of the defendant and less for the prosecution, than if the defendant were a person of whom he had never heard. McKeen testified to the same belief as Simpson in regard to the former charge of murder. He further said that, notwithstanding this belief, he could give the defendant a fair and impartial trial on the evidence in the case; that he would not hold any spite against the man for the past and would take the evidence introduced, but that if there arose a reasonable doubt, his opinion that the defendant had murdered a man once before might cause him to determine the doubt against the defendant. To the district attorney he said that if there was a doubt he did not know that he could give the defendant as fair and impartial a trial as if he had never heard of him before, but that if the court so instructed he would give him the benefit of any reasonable doubt, the same as he would any other man who was being tried. Bargroth testified that he also believed the defendant to be guilty of the murder of Dean. He then said that he did not think this opinion would influence his action as a juror in the case on trial; that the fact that he had shot a man before would lead him to believe that defendant would possibly be more apt to draw a pistol, and would make him think it more likely, if defendant drew a pistol, that he intended to use it, than in the case of a stranger; that circumstances would change this tendency considerably; that he expected he would require the defendant to show that he did not have an intention to use the pistol to kill the man he drew it upon; that if the prosecution proved that he did pull the pistol he would think this sufficient to show an intent by the defendant to kill

the man, unless he showed that he did not so intend. In answer to the district attorney he said that after it was shown that the defendant drew a pistol he would not require less evidence of his intention in doing so than in any other case; that his belief in regard to the former case might make a little difference, because it would show a difference in the character of the person, but that if the court instructed that the people must prove every element of the crime charged, beyond a reasonable doubt, to wit: That he made the assault, that he made it with a deadly weapon, and with intent to commit murder, before the defendant was required to prove anything, he could and would obey those instructions.

Actual bias is defined in section 1073 of the Penal Code as "a state of mind on the part of the juror in reference to the case, or to either of the parties, which will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party." Such bias may consist of an opinion as to the guilt or innocence of the accused, based upon some knowledge or information of the facts embraced in the charge or of the evidence to be produced, or it may exist without such knowledge or information, and may consist of a preconceived opinion concerning the defendant or the prosecuting witness which would prevent a fair consideration by the juror of the evidence given or facts proven in the case. Upon the examination of a juror on his *voir dire*, the question whether or not he has actual bias is one of fact, to be determined by the trial court upon the evidence before it. If the evidence is conflicting upon that question, as where the juror gives contradictory answers, the decision of the trial court thereon, as in any other case of conflicting evidence, is conclusive upon the appellate courts. (*People* v. *Wells*, 100 Cal. 229, [34 Pac. 718]; *People* v. *Ryan*, 152 Cal. 371, [92 Pac. 853]; *People* v. *Fredericks*, 106 Cal. 559, [39 Pac. 944]; *People* v. *Scott*, 123 Cal. 435, [56 Pac. 102]; *People* v. *Owens*, 123 Cal. 487, [56 Pac. 251]; *People* v. *Evans*, 124 Cal. 210, [56 Pac. 1024]; *People* v. *Flannelly*, 128 Cal. 86, [60 Pac. 670].)

But the inquiry as to the ability of the juror to lay aside an opinion which he has, amounting to actual bias, and to act impartially and fairly in the matter, is pertinent and material, under section 1076 of the Penal Code, only where it is an opinion upon the matter to be submitted to him and is based

solely upon public rumor, common notoriety, or statements in public journals. If the actual bias is of any other character, no further inquiry is authorized by law. To bring the juror within the exception of the section, the concurrence of the two conditions are necessary: 1. The opinion must be upon the merits of the case, "the matter or cause to be submitted"; 2. It must be founded exclusively upon one or more of the sources of information above stated. The effect of the absence of the second of these conditions has been repeatedly decided, as the following cases show.

In *People* v. *Wells*, 100 Cal. 229, [34 Pac. 718], a juror had an opinion on the merits of the case, and it was founded upon what he had been told by those who seemed to know the facts they had related to him, but he stated that, notwithstanding that opinion, he could and would act fairly and impartially in the case. The court held that he was incompetent, saying: "At common law a juror who entered the box with an opinion as to the guilt or innocence of the accused was *ipso facto* disqualified from acting in the case, but section 1076 of the Penal Code of this state creates an innovation upon this principle and declares an exception to the common-law rule. But in order that a juror disqualified at common law, by reason of having previously formed an opinion as to the guilt or innocence of the accused, may come within the provisions of the statute it must appear affirmatively to the court from the evidence before it that such opinion is formed from public rumors, or statements of public journals, or common notoriety; and it must further appear to the court by the juror's declarations under oath that, notwithstanding such opinion, he can and will act fairly and impartially upon the matter to be submitted to him." But the court proceeded to declare that where the opinion is founded upon statements from other sources than those above named, "that fact of itself is a disqualification under the law, and it is a disqualification even though the juror should declare to the court under oath that, notwithstanding such opinion, he would and could act fairly and impartially upon the matter to be submitted to him." In *People* v. *Miller*, 125 Cal. 46, [57 Pac. 771], the court says: "The juror went into the box with an opinion that the defendant was guilty. Such condition of the juror's mind was an absolute disqualification at common law. Under the Penal Code

of this state a single exception is declared in section 1076. This juror was clearly disqualified, unless he came within the provisions of the aforesaid section." This was said in view of the further fact that the juror had declared that he could and would act fairly and impartially and obey the instructions of the court. In *People* v. *Helm*, 152 Cal. 536, [93 Pac. 101], the court in discussing this subject says: "If it is not made to appear that the juror's opinion is based entirely upon one or all of the three sources of information above named; if it is shown that his belief has its origin in any other source than one of the three enumerated, he is at once as thoroughly disqualified under our code as he would have been at common law."

The principle established by these decisions is that the juror's ability to disregard actual bias, shown to exist in his mind, is wholly immaterial, save in a case which comes within the exception specified in section 1076. The concurrence of both conditions being necessary to the exception, the failure to bring the juror within it is as clear where the opinion constituting the bias or prejudice is not an opinion on the matter or cause to be submitted, as where, although it is upon that matter or cause, it is not based solely upon one or more of the sources of information named in the excepting clause. If both conditions are not met, the juror is disqualified, and no declaration by the juror that he can lay aside the prejudice and act fairly and impartially, will remove the disqualification. (*Lombardi* v. *California St. Ry. Co.*, 124 Cal. 316, [57 Pac. 66]; *Naylor* v. *Metropolitan St. Ry. Co.*, 66 Kan. 407, [71 Pac. 835]; *Coughlin* v. *People*, 144 Ill. 165, 176, [33 N. E. 1, 19 L. R. A. 57].)

In the case of the juror Simpson, at least, if not of the others, actual bias was shown to exist, and it consisted of a prejudice against the defendant growing out of a belief that he was guilty of a murder of which he had been duly acquitted by a jury. His answers were not contradictory upon this point. It amounted to this: That upon the trial of the case in hand he would take into consideration the fact that the defendant was, as he believed, guilty of a previous murder and would give that fact some weight against the defendant in determining his guilt or innocence, although the fact was not in evidence and could not be inquired into at all. The fact that

he proposed to consider a belief formed wholly upon newspaper accounts, without any knowledge of the facts of that case, a belief persisted in notwithstanding an acquittal by a jury after hearing all the evidence from the lips of the witnesses, shows a considerable degree of prejudice; and the fact that he was still willing to say, in all sincerity, that he could and would lay aside this prejudice and act fairly and impartially in the case, shows the wisdom of the common-law rule that where bias appears, the juror's opinion of his own fairness will not be considered. One of the striking instances of the frailty of human nature is the fact that a prejudiced person usually believes himself fair-minded and impartial. The guilt of the defendant of the murder of Dean in 1905 was no part of the matter to be submitted upon the charge of assault with intent to murder Kreiss in 1908. Upon the trial of the latter charge no evidence in regard to the former charge could be allowed. The prejudice clearly arose from facts extraneous to the case and it was not upon the matter to be submitted. The challenge should have been allowed.

The defendant exhausted all his peremptory challenges, and by reason of the refusal of these challenges he was forced to accept McKeen upon the jury. He asked the privilege of challenging McKeen peremptorily, and was denied. Error in denying any one of those challenges would therefore be substantially injurious to the defendant. Consequently, even if it be admitted that the answers of the jurors McKeen and Bargroth, as to the existence of actual bias on their part, were merely conflicting, and that the decision of the trial court with regard to the challenge to them is conclusive, the denial of the challenge to the juror Simpson would require a reversal of the judgment. The right to a fair and impartial jury is one of the most sacred and important of the guaranties of the constitution. Where it has been infringed, no inquiry as to the sufficiency of the evidence to show guilt is indulged and a conviction by a jury so selected must be set aside.

There are no other assignments of error that demand elaborate discussion. The testimony of Barton that a few hours after the alleged assault, defendant had called Kreiss vile names and cautioned Barton, as a friend, to have nothing more to do with him, although not in the presence of Kreiss, was admissible as evidence tending to show malice. (*People* v.

*Shears,* 133 Cal. 158, [65 Pac. 295].)  The testimony that defendant was carrying a pistol in his overcoat pocket while attending a performance at a theater in the evening of the day of the alleged assault, and several hours afterward, was irrelevant and should have been excluded.  The prosecution had proved that this was not the pistol with which the alleged assault was committed, and his possession of another pistol afterward was not shown to have any connection with or relation to the offense charged and it may have prejudiced defendant in the minds of the jurors.  The evidence of a statement by the defendant, about a week before the difficulty, that before he went to jail "somebody would go to the morgue," was admitted on the theory that the "somebody" referred to was Kreiss, the assaulted party.  Some circumstances were proven tending in a slight degree to indicate that Kreiss was the person to whom he intended to refer.  We cannot say that the evidence was irrelevant.  But the court might well have directed the jury that they should disregard it unless they found from the evidence that he did refer to Kreiss.

The judgment and order are reversed.